Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/06/2025 09:09 AM CDT

**State of Nebraska, appellee, v.
Kyle L. Rupp, appellant.**

___ N.W.3d ___

Filed April 29, 2025.    No. A-24-522.

1. **Criminal Law: Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.

3. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

4. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

5. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court

later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.

6. **Effectiveness of Counsel: Proof: Appeal and Error.** When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

7. **Effectiveness of Counsel: Records: Appeal and Error.** Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

8. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

9. ____: ____. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. To show prejudice under the prejudice component of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.

10. ____: ____. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

11. **Effectiveness of Counsel: Witnesses: Appeal and Error.** When the claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim.

12. **Effectiveness of Counsel: Postconviction: Witnesses: Appeal and Error.** Appellate counsel must give on direct appeal at least the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel so that a postconviction court may later identify whether a particular claim of failing to investigate a witness is the same one that was raised on direct appeal.

13. **Effectiveness of Counsel: Witnesses: Appeal and Error.** An appellate counsel's reference to trial counsel's failure to call "character witnesses," even with some allusion to what they would have said, was insufficiently specific to raise a claim of ineffective assistance on direct appeal.

14. \_\_\_\_: \_\_\_\_: \_\_\_\_. References to "multiple eyewitnesses" and "alibi witnesses" are insufficiently specific to effectively raise a claim of ineffective assistance on direct appeal based on the failure to call witnesses.

15. **Postconviction: Effectiveness of Counsel: Records: Appeal and Error.** In the case of an argument presented for the purpose of avoiding procedural bar to a future postconviction action, appellate counsel must present the claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.

16. **Effectiveness of Counsel: Appeal and Error.** In order to preserve an ineffective assistance of counsel claim on direct appeal, the claim must be stated with particularity in the assignment of error and then separately argued. In determining whether the assigned error is stated with particularity, it must satisfy the two-prong test prescribed in *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014).

Appeal from the District Court for Scotts Bluff County: Leo P. Dobrovolny, Judge. Affirmed.

Jerald L. Ostdiek, of Douglas, Kelly, Ostdiek, Snyder, Ossian & Vogl, P.C., for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

Moore, Bishop, and Welch, Judges.

Welch, Judge.

## I. INTRODUCTION

Kyle L. Rupp appeals from his jury convictions in the Scotts Bluff County District Court for second degree assault and use of a deadly weapon to commit a felony. Rupp contends that the evidence was insufficient to support his convictions and that his trial counsel was ineffective. For the reasons stated herein, we affirm.

## II. STATEMENT OF FACTS

On December 12, 2023, Rupp, who was intoxicated, visited the home of his cousin, Kayla Rupp. Rupp ostensibly went to Kayla's home because he wanted to get her advice about some family issues. Kayla repeatedly asked Rupp to leave, and when he failed to do so, she went to a neighbor's house to use the phone. That neighbor, Sherry Clark, answered the door with a baseball bat, which was not unusual for her to do, and informed Kayla that her phone was not working properly and advised her to use another neighbor's phone. Rupp followed Kayla to Clark's home, and a struggle ensued between Rupp and Clark, with Rupp's gaining control of the baseball bat, which caused Clark to fall into a fence. Rupp dropped the bat and began to walk away, but then grabbed the bat and reapproached the porch. After getting up, Clark went into her home and retrieved a loaded shotgun, which she pointed at Rupp. Rupp hit Clark with the bat and eventually obtained possession of both the bat and the shotgun before walking away from the scene. A law enforcement officer contacted Rupp as Rupp was walking away from the area, and both the shotgun and baseball bat were located in a nearby bush.

Following this altercation, the State charged Rupp with second degree assault, a Class IIA felony, and use of a deadly weapon to commit a felony, a Class II felony. The trial was held in April 2024, during which trial evidence was adduced from witnesses, including a Scottsbluff police officer, Caleb Scott; Clark; Rupp; and Kayla, who was called as a witness by both the State and the defense. During the trial, the State presented testimony as set forth above.

### 1. Testimony of Officer Scott

Officer Scott testified that on December 12, 2023, he responded to a call regarding an active disturbance between a male and two females. As he approached the area, Officer Scott contacted Rupp, who was walking northbound. Officer Scott observed that Rupp appeared to be intoxicated, as he had the odor of alcohol emanating from his person; he had bloodshot,

watery eyes; and he had slurred speech. Rupp informed Officer Scott that Clark had pulled a shotgun on him. Officer Scott, with the assistance of another officer, seized the shotgun and the baseball bat, which were found in a nearby bush.

## 2. TESTIMONY OF KAYLA

Kayla testified that on December 12, 2023, she received an unexpected visit from Rupp, who was intoxicated. Rupp told Kayla that he came to her apartment because "he needed somebody and that was it." Kayla testified that, despite asking Rupp to leave four or five times, he did not comply and an altercation ensued. She stated that she went to Clark's home to use the phone. Kayla testified that Clark answered the door with a baseball bat, told Kayla that her phone was not working, and suggested that Kayla use another neighbor's phone. Rupp followed Kayla to Clark's home, and Clark "kind of nudged" Rupp in the stomach with the bat. Kayla proceeded to the other neighbor's door but "they didn't answer at first." After hearing Clark fall into the fence, Kayla "ran and helped her up." At that time, Rupp was walking away toward the main sidewalk, but he returned with the baseball bat. Kayla testified that as Rupp "started walking back[, Clark] had come out with her shotgun and had her finger on the trigger. That's when I ran over to the other neighbors to call the police." Kayla testified that she observed Rupp hit Clark's hand with the baseball bat after Clark "grabbed him in his . . . private area." Kayla testified that she felt Rupp was basically trying to prevent Clark from firing the shotgun.

## 3. TESTIMONY OF CLARK

Clark testified that on December 12, 2023, she was watching television when she heard someone on the sidewalk outside her house screaming, "[N]o, don't touch me, . . . go away, . . . I'm going to call the cops." Clark opened her door with a bat by her side and "saw [Rupp] behind [Kayla]." Clark testified that she commonly answered her door at night with a bat down by her side like a cane.

After Clark informed Kayla that her phone was not working, Rupp "went from the middle sidewalk and he came marching towards my door." Clark testified that when Rupp "started walking up to the door, I put [the bat] up like I was going to . . . hit a ball, hit a pitch." Clark testified that after Rupp refused Kayla's request to "go away," Clark took a half step out the door and

> kind of swung [the bat] forward (witness indicates) towards [Rupp's] mid-section or his top leg, kind of that area . . . . [H]e caught the bat and grabbed it because I couldn't do a full swing [because] it was between us vertically . . . with me holding one end and him holding the other. . . . [H]e started to drag me out from my little sidewalk . . . . And, so I just started pushing him, I put the bat right here [stomach area] on him (witness indicates) and I just started pushing him.
>
> . . . .
> . . . I pushed him and I got him almost all the way to the gate.
>
> . . . .
> . . . So there is a gate right here, um, and then I wanted to get him past that. And, so I pushed him from down here and we were almost to the gate when . . . he stopped and wouldn't back up any further. And, so I just pulled the bat towards me and shoved it into him a couple of times (witness indicates) you know like trying to prod him along. And . . . I'm not quite sure what happened next, but I do know that I found myself lying [head-first] into that chain-link fence and I cut my hand really bad on it, and I hit my head on it, and my head and my neck hurt.

Clark testified that when she initially stepped outside and decided to swing the bat at Rupp, he had not hit her, but she did so because "I was scared and I thought that he was going to hurt [Kayla]." Clark testified that when Kayla helped her up, Rupp began "stomping away," but that he suddenly

"turn[ed] around and he start[ed] marching back . . . . I had heard him throw the bat as he was going out towards the street and I heard it hit the concrete. And, so when he turned around and came back I ran into the house and I got my granddad's gun." Clark stated that she grabbed the gun because she was afraid and wanted to protect herself.

Thereafter, Clark testified that she stepped back into her doorway with the loaded shotgun, brought it up to her shoulder, and aimed at Rupp's head. She testified:

> I remember my dad telling me that you're not supposed to . . . aim a loaded gun at something unless you are willing to kill it and I didn't want to kill him, I just wanted him gone. So I moved it over to the right of it and then I decided, you know, nobody is coming outside and nobody is paying attention. And, the gun when it goes off, it sounds like a canon. And, so I pulled it up to my chest, pointed to my right (witness indicates) and in the air and I, um, pulled the trigger, but it misfired, um, it stovepiped is what we call it. And, so it misfired and the bullet stands up in the area that it's ejected from.
>
> . . . .
>
> Yeah, sorry. I always call it a bullet. Yes. And, um, so I grabbed it and I was going to go to push it back down and I put the butt of the gun against my knee, um, so that I could have this hand free without worrying about it. And, I — I'm not quite sure exactly what happened. I do remember seeing his hand shoot out and grab the gun and that started the struggle for it.

At some point, Clark testified that Rupp retrieved the baseball bat and hit her with it. Clark testified that Rupp

> dragged me from my doorway and we wrestled back and forth and it was probably about here . . . where he started hitting me with the baseball bat because I had both of my arms on the gun (witness indicates) and, I knew that I couldn't [lose] it like I lost the bat or it

would be really bad. And, so he started just hitting me across the top of both my arms with the bat.

. . . .

. . . Um, he was hitting me and I'm not quite sure how it happened. I remember movement, um, and then all of a sudden he was behind me and, um, he had his. . . arm . . . across . . . the upper part of my chest. And, so I did what my brother always told me to do, I bent forward and I reached back and started grabbing for his "twig and berries" [Rupp's groin area].

Following the altercation, Rupp began walking down the sidewalk holding the baseball bat and the shotgun. Clark testified that she contacted a neighbor who was already on the phone with law enforcement and told her the direction Rupp was walking. Following the incident, Clark received treatment at a hospital.

### 4. Testimony of Rupp

Rupp, testifying in his own behalf, stated that he visited Kayla on December 12, 2023, because he was having a bad day with family situations and wanted to get her advice. Rupp testified that Kayla told him that "she didn't need no negativity now in her life, I needed to leave, because she couldn't handle more stress." Rupp testified that he went to the neighbor's house to see if he could use the phone there to get a ride "and that's when [Clark] came out and started hitting me in the stomach with the bat." Rupp testified that Clark hit him two times with the bat, but on the third swing, "I grabbed the bat from her and we [were] struggling trying to take it away from her. During that struggle [is] when she slipped and fell into the fence and I started to leave . . . ." After Rupp heard Kayla or Clark say that they were going to call the "cops," he turned around so he could defend himself when law enforcement arrived. Rupp testified that he was waiting by Kayla's door when Clark "[came] out with the shotgun," which was when he "got real scared." Rupp testified that Clark

was pointing [the gun] at me and I — come find out
later she had the thing loaded, that's scary. . . . [S]o she's
pointing it at me and that's when I go to grab it from her
and making sure to keep the barrel away from her head,
or my head, or the neighbor's. I'm doing this and I'm
yelling, I told her to let go, take her hand off the trig-
ger. Well, she wouldn't let go, she's still trying to get it
pointed at me like that (witness indicates). That's when
I smacked her hands a couple times with that bat to get
her to release that shotgun. And, as soon as I was able to
get those two items from her, I took off . . . and I stashed
those two items in the bush to make sure that the cops
didn't think I was going to shoot them. I didn't want to
die that night. So shortly after I put those there, that's
when the officers rolled up on me and I tried telling them
what was going on.

Rupp testified that he did not use the bat until Clark aimed the
shotgun at him.

### 5. Verdicts and Sentences

Following the trial, the jury found Rupp guilty on both
charges. Thereafter, the district court sentenced Rupp to 1 to 2
years' imprisonment for each conviction. The sentences were
ordered to run consecutively, and Rupp was given credit for
100 days served. Rupp now appeals from his convictions and
sentences and is represented by new counsel on appeal.

### III. ASSIGNMENTS OF ERROR

Rupp assigns, renumbered and restated, that (1) the evi-
dence was insufficient to support his convictions and (2) he
received ineffective assistance of trial counsel when counsel
(a) failed to subpoena requested witnesses who would have
been beneficial to Rupp, (b) failed to introduce evidence at
the trial that would have been beneficial to Rupp, (c) failed to
have Rupp present during important pretrial stages and advise
him that he was able to attend the deposition of the alleged
victim, (d) failed to adequately pursue a plea agreement, (e)

failed to effectively and adequately prepare for the jury trial, (f) failed to adequately represent Rupp in pretrial motions on the issue of bond, and (g) failed to provide an effective and zealous defense.

## IV. STANDARD OF REVIEW

[1] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Dixon*, 306 Neb. 853, 947 N.W.2d 563 (2020).

[2,3] Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. Sufficiency of Evidence

Rupp argues that the evidence was insufficient to support either of his convictions because the "evidence presented at trial leads a rational trier of fact to find that [Rupp] was acting in self[-]defense." Brief for appellant at 12.

However, in *State v. Woolridge-Jones*, 316 Neb. 500, 520, 5 N.W.3d 426, 439-40 (2024), the Nebraska Supreme Court rejected a similar argument, stating:

> To the extent [the defendant] argues that the evidence supported at most a manslaughter conviction, see Neb. Rev. Stat. § 28-305(1) (Reissue 2016), or that his actions were justified by self-defense or defense of another, see Neb. Rev. Stat. §§ 28-1409 and 28-1410 (Reissue 2016),

he asks us to make credibility determinations, reweigh the evidence, and reach our own conclusion. But that was the jury's role, not ours. See *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020) (appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, or reweigh evidence; such matters are for finder of fact).

Likewise, in this case, Rupp asks us to make a credibility determination, resolve conflicts in the evidence, and reweigh the evidence related to his self-defense claim. However, that is the role of the fact finder, and we will not substitute the jury's factual findings with our own.

Rupp was convicted of second degree assault in violation of Neb. Rev. Stat. § 28-309(1)(a) (Reissue 2016), which provides, in pertinent part, that "[a] person commits the offense of assault in the second degree if he or she . . . [i]ntentionally or knowingly causes bodily injury to another person with a dangerous instrument." Rupp was also convicted of use of a deadly weapon to commit a felony under Neb. Rev. Stat. § 28-1205(l)(a) (Cum. Supp. 2024), which provides, in pertinent part, that "[a]ny person who uses a firearm, a knife, brass or iron knuckles, or any other deadly weapon to commit any felony which may be prosecuted in a court of this state commits the offense of use of a deadly weapon to commit a felony." A "[d]eadly weapon" is defined as "any firearm, knife, bludgeon, or other device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or intended to be used is capable of producing death or serious bodily injury." Neb. Rev. Stat. § 28-109(8) (Reissue 2016).

[4] The evidence, when viewed in the light most favorable to the State, established that Rupp hit Clark with a baseball bat, causing her serious physical injury that required her to go to the hospital. Clark testified that "above [her] wrist was majorly deformed" and that she thought her arm was "broken." Additionally, she had bruises from her elbow to "the tips of [her] fingers on both arms," which "swelled up really big" to the point where she "couldn't even feed [herself]

for two weeks." And although Rupp argued that he acted in self-defense, there was evidence that following the first altercation, when Rupp wrestled the bat away from Clark and walked away, he returned with the bat despite previously being instructed to leave. This resulted in the second encounter, when he struck Clark, who had retrieved a shotgun when Rupp returned to her porch while brandishing the bat. Although Rupp testified to a different version of events, the jury apparently found that his testimony was not credible. In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. Applying that standard to this record, this assignment of error fails.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Rupp next assigns that he was denied effective assistance of counsel during the trial when counsel (a) failed to subpoena requested witnesses who would have been beneficial to Rupp, (b) failed to introduce evidence at the trial that would have been beneficial to Rupp, (c) failed to have Rupp present during important pretrial stages and advise him that he was able to attend the deposition of the alleged victim, (d) failed to adequately pursue a plea agreement, (e) failed to effectively and adequately prepare for the jury trial, (f) failed to adequately represent Rupp in pretrial motions on the issue of bond, and (g) failed to provide an effective and zealous defense.

[5,6] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance

with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. Miranda, supra*. When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id*.

[7] Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

[8,9] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Miranda, supra.* To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. To show prejudice under the prejudice component of *Strickland*, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023).

[10] Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024).

(a) Failure to Subpoena Requested Witnesses

Rupp's first ineffectiveness of trial counsel assignment of error alleges that his trial counsel was ineffective in "fail[ing] to subpoena to testify [Rupp's] requested witnesses, who would have been beneficial to [Rupp]."

[11,12] In *State v. Rush*, 317 Neb. 622, 673-74, 11 N.W.3d 394, 435 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787, the Nebraska Supreme Court stated:

The alleged failure to call "any other character witness" fails to sufficiently raise a claim of ineffective assistance of counsel. When the claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. Appellate counsel must give on direct appeal at least the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. Such specificity is necessary so that a postconviction court may later identify whether a particular claim of failing to investigate a witness is the same one that was raised on direct appeal.

[13,14] An appellate counsel's reference to trial counsel's failure to call "character witnesses," even with some allusion to what they would have said, was insufficiently specific to raise a claim of ineffective assistance on direct appeal. See *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). And references to "'multiple eyewitnesses'" and "'alibi witnesses'" are insufficiently specific to effectively raise a claim of ineffective assistance on direct appeal based on the failure to call witnesses. *State v. Rush*, 317 Neb. at 678, 11 N.W.3d at 438.

Here, in his assignment of error, Rupp alleges that his trial counsel was ineffective for "fail[ing] to subpoena to testify [his] requested witnesses, who would have been beneficial to [Rupp]." That allegation most assuredly does not conform with the directive in *Rush* that "appellate counsel must give on direct appeal at least the names or descriptions of any

uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel." 317 Neb. at 678, 11 N.W.3d at 438.

Although Rupp was somewhat more descriptive in the argument section of his brief regarding these witnesses, the Nebraska Supreme Court specifically held in *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019):

> We observe that [the defendant's] last assignment lacked the specificity we demand on direct appeal. We have held that when raising an ineffective assistance claim on direct appeal, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. And we have long held that an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. It follows that we should not have to scour the argument section of an appellant's brief to extract specific allegations of deficient performance. We now hold that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

[15] For clarity, the assigned error the Nebraska Supreme Court was addressing in *Mrza* was the defendant's claim that his counsel was ineffective in "'fail[ing] to adequately investigate [the defendant's] defenses and effectively cross-examine witnesses.'" 302 Neb. at 935, 926 N.W.2d at 86. Although those assignments could be generally categorized as referring to a failure to investigate a defendant's case and a failure to cross-examine during trial, it is not surprising that this general categorization of error fell short of the Nebraska Supreme Court's prior statement governing the meaning of alleging an ineffective assistance assignment of error with specificity. The court held in *State v. Abdullah*, 289 Neb. 123, 132-33, 853 N.W.2d 858, 866 (2014):

We did not elaborate, however, on the level of speci-
ficity of such allegations beyond the general principles
concerning vague and conclusory assignments of error
and arguments. Given that [the defendant's] arguments
are stated more cursorily than those presented in [*State
v.*] *Filholm*, [287 Neb. 763, 848 N.W.2d 571 (2014),]
we are more squarely presented with that question here.
We hold that in the case of an argument presented for
the purpose of avoiding procedural bar to a future post-
conviction action, appellate counsel must present the
claim with enough particularity for (1) an appellate court
to make a determination of whether the claim can be
decided upon the trial record and (2) a district court later
reviewing a petition for postconviction relief to be able
to recognize whether the claim was brought before the
appellate court.

In applying that standard to the claim that the defendant's
counsel in *Abdullah* failed to call "'at least two witnesses'"
that the defendant claimed would be beneficial to his case, the
court held that

> the vague assertion referring to "at least two" witnesses
> seems little more than a placeholder. Our case law is
> clear that were this a motion for postconviction relief,
> [the defendant] would be required to specifically allege
> what the testimony of these witnesses would have been if
> they had been called in order to avoid dismissal without
> an evidentiary hearing. Without such specific allegations,
> the postconviction court would effectively be asked to
> "'conduct a discovery hearing to determine if anywhere
> in this wide world there is some evidence favorable to
> defendant's position.'"
>
> In a direct appeal, we do not need specific factual alle-
> gations as to who should have been called or what that
> person or persons would have said to be able to conclude
> that any evidence of such alleged ineffective assistance
> will not be found in the trial record. Nevertheless, we

are concerned with the lack of any specificity as to who those uncalled witnesses were from the standpoint of a potential postconviction court's ability to identify if a particular failure to call a witness claim is the same one that was raised on direct appeal.

[The defendant's] appellate counsel argues that it is impractical in the time granted for a direct appeal to fully research the alleged deficient conduct of trial counsel and to allege factual details of such conduct with specificity. And we are sensitive to some of the concerns expressed by the U.S. Supreme Court in *Massaro*[ *v. United States*, 538 U.S. 500, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003)]. But we can think of no good reason why [the defendant] would be unable to give appellate counsel the names or descriptions of the uncalled witnesses he claims he informed trial counsel of.

*State v. Abdullah*, 289 Neb. at 133-34, 853 N.W.2d at 867.

At the time that *Abdullah* was decided in 2014, the Nebraska Supreme Court had not made the directive that the specificity required for claims of ineffective assistance must separately be stated in the assignments of error section of the brief. As such, the court reviewed the argument section of the brief in *Abdullah* in search of greater clarity than provided in the assignments of error. But following its 2019 decision in *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019), the Court stated it would no longer scour the argument section of the brief in search of such clarity.

[16] Taken together, in order to preserve an ineffective assistance of counsel claim on direct appeal, the claim must be stated with particularity in the assignment of error and then separately argued. In determining whether the assigned error is stated with particularity, it must satisfy the two-prong test prescribed in *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). As the dissent notes, in *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787, the Nebraska Supreme Court

did find clarity in the assigned error through a statement made in the argument section of the brief. But in our view, if there was any confusion governing the requirement that the claim must separately be stated with particularity within the assignments of error section of the brief for the appellant, meaning the assigned error itself must satisfy the two-prong pleading standard, that matter was recently settled in *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024). In *German*, the Nebraska Supreme Court examined an assignment of error that alleged the appellant's trial counsel

> was ineffective "in respect to [a]dvice [p]rovided on the [d]ecision to [w]aive the [r]ight to [t]estify [b]y [p]roviding [u]nreasonable [a]dvi[c]e [n]ecessary for a [m]eaningful [d]ecision." This assignment lacks the specificity we demand on direct appeal.
>
> Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. This is not a new principle. We have adhered to it on numerous occasions.

316 Neb. at 872, 7 N.W.3d at 229.

The assigned error in *German* could be generally categorized as a claim of failing to provide adequate advice in connection with the defendant's decision not to testify. And when applying the two-prong test set forth in *Abdullah*, *supra*, it does provide sufficient particularity for an appellate court to determine that such advice was not contained in the record. But similar to *Abdullah*, the assignment did not satisfy the second prong of the test because of its generality. This broadly worded assignment would fall within the ambit of a placeholder because, as the court went on to explain, this "assertion does not set forth the advice actually given and claimed to be insufficient, or the specific advice not given." *State v. German*, 316 Neb. at 873, 7 N.W.3d at 230. And although the court went on to find that even if it did expand its review to

the argument section of the brief, the claim would still fail, and we read that as an admonition that the Court intended to subsequently enforce its original pronouncement set forth in *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

Applying this precedent, we find that Rupp's general assignment that his counsel was ineffective in "fail[ing] to subpoena to testify [his] requested witnesses, who would have been beneficial to [Rupp]," was not stated with specificity within the assignments of error section of the brief, and we will not scour the remainder of the brief in an attempt to gain more clarity. More specifically, although this assignment may be sufficient to conclude the matter could not be deciphered from the record, Rupp's failure to provide the names of the witnesses or specific description of them makes it impossible for a district court later reviewing a petition for postconviction relief to be able to recognize whether the specific claimed witnesses were brought before the appellate court. Stated differently, Rupp identified a category of ineffective assistance without specifically identifying the witnesses his counsel should have called. Accordingly, this claim is not preserved.

### (b) Failure to Introduce Evidence
### Beneficial to Defense

Rupp next assigns that his trial counsel was ineffective in "fail[ing] to introduce evidence at the trial which would have been beneficial to [Rupp]."

In *State v. Bedford*, 31 Neb. App. 339, 369-70, 980 N.W.2d 451, 475-76 (2022), this court found:

> [The defendant] contends that trial counsel was ineffective in failing to "present evidence . . . in [counsel's] possession at trial," including "emails and text messages" from [the victim]. Brief for appellant at 31. He asserts that "[t]hese emails and text messages could have been used to impeach and . . . challenge" [the victim's] testimony. *Id*. We conclude that this claim of deficient performance has not been sufficiently alleged.
>
> . . . .

[The defendant] offers this court no further description of which emails or text messages are applicable; nor does he provide any indication of their contents or how they could have been used to impeach [the victim's] testimony. It is not sufficient to simply allege that some messages were in counsel's possession that may or may not have been relevant to the impeachment of [the victim's] testimony. See, *State v. Hill*, 298 Neb. 675, 699, 905 N.W.2d 668, 686 (2018) (ineffective assistance of trial counsel claim regarding counsel's failure to depose "'numerous other police officers'" without specifically alleging what testimony of these witnesses would have been is not sufficient allegation of deficient performance for purpose of preserving claim for postconviction review); *State v. Ash*, [293 Neb. 583, 878 N.W.2d 569 (2016)] (ineffective assistance of trial counsel claim alleging deficient performance based merely on trial counsel's possession of psychiatric evaluation which was not offered or used at trial without further explanation as to what it contained, how it could have been used, or what it might have been offered to prove is not stated with sufficient particularity to preserve claim for postconviction review).

As we stated before, appellants are required to state with particularity specific allegations of ineffective assistance of counsel in the assignments of error section of their brief. Again, although an allegation claiming that trial counsel was ineffective in failing to introduce evidence at trial that would have been beneficial to the defense may be sufficient for us to conclude the matter cannot be determined on the record, it lacks the specificity for a district court addressing a motion for postconviction relief to later determine if the specific matter had been presented and preserved on direct appeal. Stating that trial counsel failed to present evidence in the assignment of error serves as a mere placeholder, and we will not scour the remainder of the brief searching for greater clarity. This assigned error is not preserved.

(c) Failure to Advise Rupp About
Deposition and Ensure His Presence

Rupp next contends that his trial counsel was ineffective for failing to have Rupp appear during important pretrial stages, failing to inform him of Clark's deposition, and failing to advise Rupp that he could attend Clark's deposition.

We first note that although Rupp assigns as error that trial counsel was ineffective in failing to have Rupp present during important pretrial stages, he argues only that counsel was ineffective in failing to have Rupp present at Clark's deposition. Therefore, we limit our consideration to whether trial counsel was ineffective for failing to advise Rupp that he could attend Clark's deposition. Rupp asserts that had he been present, he could have assisted trial counsel in questioning Clark.

But alleging that Rupp could have assisted his counsel in questioning Clark is simply too broad of a statement for a later district court to determine whether the specific allegation was preserved. We find this allegation is similar to the Nebraska Supreme Court's rejection of a broad allegation in *State v. Hill*, 298 Neb. 675, 699, 905 N.W.2d 668, 686 (2018), governing counsel's failure to depose "'numerous other police officers,'" where the court rejected the assignment for lack of specificity for failing to disclose what the testimony of those witnesses would have been, or the general allegation in *State v. Sinkey*, 303 Neb 345, 351, 929 N.W.2d 35, 39 (2019), that trial counsel was ineffective because counsel "only 'lightly' cross-examined the detective and the victim's mother, but again, he fail[ed] to detail what questions should have been asked that would have contributed to his defense."

Because Rupp failed to identify the specific subject matter he could have contributed to aid counsel in questioning, even if he attended the deposition, we find this allegation falls into the category of a mere placeholder that makes it impossible for a district court on postconviction to determine whether the specific issue was preserved. Accordingly, this assigned error is not preserved.

### (d) Failure to Pursue Plea Agreement

Rupp assigns that his trial counsel was ineffective in failing to adequately pursue a plea agreement with the State. Rupp states that the plea agreement offered by the State would have allowed him to plead to a misdemeanor charge in exchange for the dismissal of the felony charge. However, he asserts that a week before the trial, when he asked counsel if he should take the plea, counsel informed him it was too late but did not approach the State to inquire about whether a plea agreement could still be made.

The record here is insufficient to address this claim on direct appeal, and it is stated with sufficient particularity to later address the specific issue during a postconviction proceeding. The record does not indicate what, if any, discussions were had about the plea agreement and its expiration date, or any indication of whether trial counsel contacted the State about whether the plea agreement was still available the week prior to trial. Because the record is insufficient to address this claim, it is preserved.

### (e) Failure to Prepare for Jury Trial

Rupp next assigns that his trial counsel was ineffective in failing to effectively and adequately prepare for the trial. Once again, although this allegation is sufficient for an appellate court to find the matter cannot be resolved on the record, it provides no detail regarding what his trial counsel failed to do in preparation specifically as it relates to counsel's subsequent performance during Rupp's trial. The allegation is merely a placeholder, and it is not preserved.

### (f) Failure to Adequately Represent
### Rupp During Bond Hearing

Rupp next assigns as error that his trial counsel "failed to adequately represent [Rupp] in pretrial motions on the issue of bond." He states that his counsel failed to correct an inaccurate statement that Rupp pointed a gun at the alleged victim that kept his bond amount at $5,000 for 2 months.

The evidence established that trial counsel filed a motion for bond review that was heard by the court in January 2024. During the hearing, counsel argued that Rupp's bond was set at $100,000, which sum Rupp could not afford to pay. The State argued:

Rupp repeatedly went to his cousin's house even after being told two to three times to leave. His cousin then went to a neighbor's house, um, that neighbor was 54 years-old. The idea was that neighbor was going to be able to call law enforcement. Her phone wasn't working, so she came outside, she had a bat with her. The bat fell on the ground and, allegedly, . . . Rupp picked up the bat and hit that neighbor, who doesn't indicate he had any connection with. Um, but he hit her multiple times with that bat. So there is definitely some violence involved in this.

We find that Rupp's argument is refuted by the record. There is nothing in this record to reflect that the State made any statements during the bond hearing that Rupp was pointing a gun at the alleged victim or that the presence of a gun was the reason the court refused to lower the bond. Therefore, counsel was not ineffective for failing to correct the alleged error during the bond hearing. This assignment of error fails.

### (g) Failure to Provide Effective and Zealous Defense

Rupp's final assignment of error related to the ineffectiveness of trial counsel is that counsel was ineffective in "fail[ing] to provide an effective and zealous defense."

In *State v. Turner*, 315 Neb. 661, 677, 998 N.W.2d 783, 795 (2024), the Nebraska Supreme Court rejected the appellant's assignments of error as insufficiently pled when the appellant assigned that his defense counsel failed to "'zealously advocate for [him]'" and failed to "'present an adequate defense.'"

Similarly, here, Rupp's assigned error is insufficiently pled in that it does not specify trial counsel's alleged deficiency,

and we decline to scour the remainder of Rupp's brief to find the specificity required. This assignment of error fails.

## VI. CONCLUSION

Having found that Rupp's assigned errors are without merit, with the exception of the claim that trial counsel was ineffective for failing to adequately pursue a plea agreement with the State that has been preserved for postconviction, we affirm Rupp's convictions and sentences.

AFFIRMED.

BISHOP, Judge, concurring in part, and in part dissenting.

I respectfully disagree with the majority's view regarding how specifically an assigned error must be stated in a direct appeal before an appellate court may even reach the appellant's corresponding argument to determine whether an ineffective assistance of trial counsel claim has been sufficiently raised. The majority is reading certain Nebraska Supreme Court cases to require a higher level of specificity in the assignments of error section of a brief before it is willing to even consider the accompanying argument later in the brief. I read those cases differently.

While I agree that ineffective assistance of trial counsel assignments of error on direct appeal must specifically allege how trial counsel performed deficiently, I disagree as to the level of detail that must be contained in the assigned error itself. If the alleged deficient performance is identified in the assigned error and there is a directly corresponding heading and discussion in the argument section of the appellant's brief, there is no need to "scour" the brief to determine whether the claim has been sufficiently raised. The assigned errors in this case each alleged deficient performance, and each assigned error contained identical corresponding headings and fuller discussion in the argument section of the brief. In my opinion, each of Rupp's assigned errors alleging deficient performance of trial counsel was sufficiently stated to allow us to consider the corresponding arguments later in the brief to determine

whether the claim of ineffective assistance of trial counsel was sufficiently raised. I do not read the cases relied upon by the majority to require so much specificity in the assignments of error section of an appellant's brief that we are unwilling to even consider the development of the assigned error in the argument section of the brief. This is especially concerning when the assigned error is exactly restated in an argument heading under which the alleged deficiency is more fully explained, thus avoiding any need to "scour" the brief to ascertain the claim of ineffective assistance.

There is no question that *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019), established a new standard for raising a claim of ineffective assistance of trial counsel in a direct appeal. It stated, "We now hold that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity." *Id*. at 935, 926 N.W.2d at 86. In that case, the Supreme Court determined that the assignment of error asserting ineffective assistance of trial counsel for "'fail[ing] to adequately investigate [the defendant's] defenses and effectively crossexamine witnesses'" did not meet the specificity demanded on direct appeal and that the court "should not have to scour the argument section of an appellant's brief to extract specific allegations of deficient performance." *Id*.

More recently, the Nebraska Supreme Court addressed an assigned error that claimed trial counsel was ineffective for "failing to adequately impeach" a named witness. *State v. Rush*, 317 Neb. 622, 653, 11 N.W.3d 394, 423 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787. The error assigned in the appellate brief in that case stated that trial counsel was ineffective for failing to adequately impeach a key prosecution witness via testimony on her character for truthfulness. Although the assigned error did not state the name of the key prosecution witness, nor did it state any details about how the witness' impeachment was inadequate or deficient, the argument section of the appellant's brief added

that trial counsel was ineffective by failing to call a named witness' "adoptive parents or 'any other character witness' to impeach [the witness'] character as to truthfulness." *State v. Rush*, 317 Neb. at 673, 11 N.W.3d at 435. The Supreme Court found that the claim related to not calling the adoptive parents as impeachment witnesses was sufficiently raised but concluded that the record was sufficient to determine that trial counsel was not constitutionally deficient. However, with regard to the appellant's general reference to any other character witness, the court concluded this aspect of the claim was not sufficiently raised. It stated:

> When the claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call 'witnesses' are little more than placeholders and do not sufficiently preserve the claim. Appellate counsel must give on direct appeal at least the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. Such specificity is necessary so that a post-conviction court may later identify whether a particular claim of failing to investigate a witness is the same one that was raised on direct appeal.

*Id*. at 67374, 11 N.W.3d at 435.

Notably, the assigned error in *State v. Rush, supra*, referred only to trial counsel's failure to inadequately impeach a key prosecution witness. The name of the witness and the reference to the witness' adoptive parents were not provided until the argument section of the brief. Yet, as noted, the Supreme Court found the assigned error sufficient to reach the argument made later in the brief, and together, the court found the claim was sufficiently raised to address it. In other words, the deficiency was alleged with some specificity in the assigned error, but more specific details were provided later in the corresponding argument section of the brief to more fully develop the appellant's claim of ineffective assistance. Together, the claim was sufficiently presented.

The majority also reads *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024), to stand for the proposition that an assignment of error itself must satisfy the "twoprong test prescribed" in *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). That test requires *a claim* to be presented with enough particularity for (1) an appellate court to make a determination of whether *the claim* can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief is able to recognize whether *the claim* was brought before the appellate court. See *id*. I have emphasized the word "claim" because, as in *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787, an assigned error that alleges deficient performance with some degree of specificity, along with its corresponding argument providing further details, may together sufficiently present *the claim* for consideration on direct appeal.

Notably, *State v. Abdullah, supra*, was decided before *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019), and the assignment of error in the appellant's brief in *Abdullah* was the vague assertion that the appellant was denied effective assistance of counsel. The Nebraska Supreme Court granted a petition for further review from this court's decision in that case. It stated, "We granted further review in this case to clarify the necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver of such claims in a later postconviction motion." *State v. Abdullah*, 289 Neb. at 128, 853 N.W.2d at 86364. Importantly, the court stated:

> By definition, a claim insufficiently stated is no different than a claim not stated at all. Therefore, if insufficiently stated, *an assignment of error and accompanying argument* will not prevent the procedural bar accompanying the failure to raise all known or apparent claims of ineffective assistance of trial counsel.

But the level of specificity required in order for *an assignment of error and its accompanying argument* to be 'sufficient' must logically depend on the purposes of the appellate court's review. . . . We explained that it is the appellant's allegations of deficient conduct and not the appellant's allegations of prejudice that have historically guided our review of whether the claims of ineffective assistance of counsel can be determined upon the trial record. . . . [A]ppellate counsel need only make specific allegations of deficient conduct.

We did not elaborate, however, on the level of specificity of such allegations beyond the general principles concerning vague and conclusory *assignments of error and arguments*. . . . [W]e are more squarely presented with that question here. We hold in the case of *an argument presented* for the purpose of avoiding procedural bar to a future postconviction action, appellate counsel *must present the claim* with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.

*Id*. at 13233, 853 N.W.2d at 866 (emphasis supplied).

It is important to note that the language emphasized above refers to looking for specificity in the assignment of error *and* accompanying argument (conjunctively) and that the "argument presented" (not the assigned error alone) must "present the claim with enough particularity" to meet the twoprong test indicated. *Id*. at 133, 853 N.W.2d at 860. The Supreme Court went on to express concern about the "lack of any specificity as to who those uncalled witnesses were from the standpoint of a potential postconviction court's ability to identify if a particular failure to call a witness claim is the same one that was raised on direct appeal." *State v. Abdullah*, 289 Neb. 123, 13334, 853 N.W.2d 858, 867 (2014). *State v. Rush, supra*,

later explained that appellate counsel must give on direct appeal at least the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel; in that case, the names were provided in the corresponding argument section of the appellant's brief, not in the assigned error.

Also, in *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024), the appellant assigned as error that his trial counsel was ineffective for not providing the advice necessary for him to make a meaningful decision about waiving his right to testify. The Supreme Court determined that the appellant's assigned error did not sufficiently allege deficient performance; however, the court nevertheless also observed that the assigned error was expanded upon in the argument portion of the appellant's brief. Even considering the "expanded assertion," the court concluded that it failed to "set forth the advice actually given and claimed to be insufficient, or the specific advice not given" and therefore lacked the "necessary specificity." *Id*. at 873, 7 N.W.3d at 230.

Based upon my reading of the abovenoted cases, I would have found the following claims of ineffective assistance of trial counsel sufficiently assigned and argued to preserve a potential claim for postconviction review: (1) failing to subpoena medical personnel who treated Clark, to whom she told that the blood and stitches on her hands were a result of her racking the shotgun, which was allegedly inconsistent with her trial testimony (although Rupp did not provide specific names of the medical personnel who treated Clark, he specifically limited the nature of their testimony to alleged inconsistent statements Clark made to them about her hand injuries, thus making such witnesses identifiable in any later postconviction action as being the same witnesses raised in this direct appeal); (2) failing to introduce a video of Clark at the hospital during which she allegedly made statements inconsistent with her trial testimony; and (3) failing to effectively and adequately prepare Rupp for trial by only meeting

with him "two times before the trial, each for less than five minutes," brief for appellant at 16. In my opinion, these three claims were presented with enough particularity for this court to determine (1) whether the claims could be decided upon the trial record, which they could not, and (2) whether a district court later reviewing a petition for postconviction relief would be able to recognize whether the claim was brought before the appellate court, which it certainly could. See *State v. Abdullah, supra*. Therefore, as to the majority's decision as to these three claims, I dissent.

As to the remaining claims of ineffective assistance of trial counsel, although in some instances for different reasons, I concur with the majority's ultimate determinations. I also concur with the remainder of the majority's opinion.