Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/12/2025 08:09 AM CST

State of Nebraska, appellee, v.
Kyle L. Rupp, appellant.
___ N.W.3d ___

Filed December 12, 2025.    No. S-24-522.

1. **Criminal Law: Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Appeal and Error.** Whether an assignment of error and accompanying argument is too vague to be sufficiently raised before the appellate court is a question of law.

3. **Self-Defense.** To successfully assert the claim of self-defense, one must have an objectively reasonable and good faith belief in the necessity of using force, and the force used in defense was immediately necessary and justified under the circumstances.

4. **Self-Defense: Juries.** A defendant's claim of self-defense is a question of fact for the jury.

5. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, or else the claim will be procedurally barred.

6. **Effectiveness of Counsel: Records: Appeal and Error.** The appellate court will determine if the record on appeal is sufficient to review the merits of the ineffective performance claims.

7. **Postconviction: Effectiveness of Counsel: Appeal and Error.** A motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred when (1) the defendant was represented by a different attorney on direct appeal than at trial, (2) an ineffective assistance of trial counsel claim was not brought on direct appeal, and

(3) the alleged deficiencies in trial counsel's performance were known to the defendant or apparent from the record.

8. **Appeal and Error.** A generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered.

9. **Claims: Effectiveness of Counsel.** A claim of ineffective assistance of trial counsel that is insufficiently stated is no different than a claim not stated at all and will not prevent the procedural bar accompanying the failure to raise all known or apparent claims of ineffective assistance of trial counsel.

10. **Postconviction: Effectiveness of Counsel: Records: Appeal and Error.** For the purpose of avoiding a procedural bar to a future post-conviction action, appellate counsel must present the claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.

11. ____: ____: ____: ____. While a defendant with new counsel on appeal must make specific allegations of trial counsel's deficient performance known to the defendant or apparent from the record, the defendant is not required to make detailed factual allegations of prejudice to preserve a claim of ineffective assistance of trial counsel.

12. **Effectiveness of Counsel: Records: Appeal and Error.** A specific enough description of deficient performance in the assignment of error must, standing alone, permit an appellate court to determine if the claim can be decided upon the trial record and permit a district court to later recognize if the claim was brought before the appellate court.

13. ____: ____: ____. The argument section of the brief is to elaborate on the ineffective assistance of counsel claims by discussing legal authority and its application to the trial record, not to set forth, for the first time, the allegedly deficient act.

14. **Effectiveness of Counsel: Appeal and Error.** Any claim of ineffective assistance of counsel alleging deficient conduct must be more specific than generalities of inadequate preparation or failures to introduce beneficial evidence.

15. ____: ____. Claims of alleged failures by counsel respecting motions must set forth on what grounds a motion should have been made or what information was omitted from a motion that was made.

16. **Effectiveness of Counsel: Postconviction: Witnesses: Appeal and Error.** When the claim of ineffective assistance on direct appeal involves uncalled witnesses, the defendant must give the names or descriptions of any uncalled witnesses forming the basis of a claim

of ineffective assistance of trial counsel; what the witness would have said may be part of the witness' description when the name is unknown.

Petition for further review from the Court of Appeals, Mᴏᴏʀᴇ, Bɪsʜᴏᴘ, and Wᴇʟᴄʜ, Judges, on appeal thereto from the District Court for Scotts Bluff County, Lᴇᴏ P. Dᴏʙʀᴏᴠᴏʟɴʏ, Judge. Judgment of Court of Appeals affirmed.

Jerald L. Ostdiek, of Douglas, Kelly, Ostdiek, Snyder, Ossian & Vogl, P.C., for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

Fᴜɴᴋᴇ, C.J., Cᴀssᴇʟ, Sᴛᴀᴄʏ, Pᴀᴘɪᴋ, Fʀᴇᴜᴅᴇɴʙᴇʀɢ, and Bᴇʀɢᴇᴠɪɴ, JJ.

Fʀᴇᴜᴅᴇɴʙᴇʀɢ, J.

## I. INTRODUCTION

Kyle L. Rupp was convicted by a jury of second degree assault and use of a deadly weapon to commit a felony. He appealed to the Nebraska Court of Appeals, which affirmed. The Court of Appeals found there was sufficient evidence to support the verdicts despite Kyle's claim of self-defense. Further, it held that all but one of Kyle's claims of ineffective assistance of trial counsel were insufficiently raised because the assignments of error, read disjunctively from the argument section of the brief, did not provide enough particularity for both (1) a district court reviewing a petition for postconviction relief to be able to recognize whether the claim was raised and preserved on direct appeal and (2) the appellate court on direct appeal to be able to determine if the claim can be decided upon the trial record. As for the remaining claim of ineffective assistance of trial counsel, the Court of Appeals found the record insufficient to review it on direct appeal. We granted further review.

## II. BACKGROUND

### 1. Trial

The victim, Sherry Clark (Sherry), lived in the same apartment complex as Kyle's cousin, Kayla Rupp. Late one evening in December 2023, Kyle showed up at Kayla's apartment for an unexpected and unwelcome visit. Kayla testified Kyle was drunk. Using forceful language, Kayla told Kyle, approximately four times, to leave. Kyle refused to do so. The entrance to each apartment was accessible directly from the outdoor common area. Sherry was inside her apartment. She testified she heard screaming and Kayla's telling someone not to touch her and that she was going to "call the cops."

Kayla testified she went to Sherry's apartment. Kayla's phone was broken, and she was going to ask to use a phone to call a family member or the police. Sherry answered the door holding a baseball bat. Sherry told Kayla her phone was not working, explaining at trial it only took incoming calls.

Sherry saw a man behind Kayla "marching towards [Sherry's] door." According to Sherry, Kyle came close to her door and refused Kayla's demand that he leave, so Sherry swung the bat toward Kyle's midsection. He caught it and started to drag Sherry "out from [her] little sidewalk." Sherry started pushing Kyle back with the bat.

Kayla left to see if someone else in the apartment complex was home and had a working phone to call the police. Meanwhile, Sherry had managed to push Kyle almost to the gate that led into the complex. But she could not get him to move further. Sherry tried to "prod him along." Kayla confirmed Sherry was nudging Kyle in the stomach with the bat.

Sherry testified that, suddenly, Kyle threw her into the chain link fence. She found herself "lying head first" in the fence. Sherry testified she cut her hand and hit her head on the fence. Kayla was knocking on another neighbor's door to find a phone to call the police and did not see all of Sherry's and Kyle's interactions, but she heard Sherry fall into the chain link fence.

Kyle apparently had, by that point, obtained the bat. A neighbor testified that she heard Sherry's cries for help and that she saw a person, whom she identified as Kyle, at the gate, hitting Sherry with a bat. Kayla went to help Sherry up. Both Sherry and Kayla testified that around this time, Kyle was walking away.

Kyle then turned back in their direction. Sherry described that after seeing Kyle "stomping away," "all of a sudden he turn[ed] around and he start[ed] marching back." Kayla testified she saw Kyle coming back and holding the bat. Sherry testified she ran into her apartment and "got my granddad's gun," which was a 12-gauge shotgun "from the 50's."

After retrieving the shotgun, Sherry said she stood in her doorway, brought the gun to her shoulder, and pointed it at Kyle. However, she said that she did not want to kill Kyle, so she decided instead to fire a shot in the air to get the attention of somebody who could help them.

Sherry testified she pulled the shotgun up to her chest, pointed it in the air, and pulled the trigger. It misfired. Sherry tried to push the shotgun shell back in, but Kyle's hand "sho[t] out and grab[bed] the gun." A struggle over the shotgun ensued. Sherry testified Kyle started hitting her with the baseball bat. Kayla confirmed she saw Kyle hit Sherry's hand with the bat, which action Kayla described as "in defense[,] trying to get [Sherry's] hand off of the trigger."

Sherry testified that during the struggle, Kyle dragged her from her doorway, but she "knew that [she] couldn't [lose the gun] like [she] lost the bat or it would be really bad." Sherry testified that Kyle started hitting her with the bat across both arms and that they continued to wrestle for the gun. Eventually, Kyle was able to take the gun from Sherry. Nevertheless, Sherry had "got a hold of [Kyle's] 'twig and berries' a couple times and [she] guess[ed] that convinced him to move away from [her]." Sherry testified Kyle walked away with her gun and her bat.

Police on the way to the scene encountered Kyle nearby. Kyle identified himself and reported that a neighbor had pulled a shotgun on him. Police eventually found the gun and the bat hidden in some bushes about two blocks away from the apartment complex.

Sherry testified she suffered several injuries from the incident. Her wrist was "majorly deformed," and she had "bruises from [her] elbow all the way down . . . to the tips of [her] fingers on both arms." Pictures in evidence showed cuts on Sherry's hand and elbow.

Kyle, who testified in his own defense, had a different recollection of what occurred that night. He acknowledged that Kayla did not want to talk to him and that he "was maybe a little intoxicated." Kyle testified he was going to leave the apartment complex but needed a ride. Kyle testified he did not have a phone to call for a ride. According to Kyle, he went to a neighboring apartment to ask to borrow a phone, and the neighbor "came out and started hitting [him] in the stomach with the bat."

Kyle testified that he struggled to take the bat away from Sherry and that "[d]uring that struggle that's when she slipped and fell into the fence and [he] started to leave." Kyle explained he turned back toward the apartment complex because he heard someone was wanting to call the police and fleeing would make him look guilty. He decided to stay to "defend [him]self." On cross-examination, when asked who called the police, Kyle testified that it might have been him—to report he had been assaulted. When asked why he came back with a baseball bat, Kyle said, "[He] wasn't going to leave the scene knowing that police might be on their way." When pressed on why he came back with the bat, Kyle said he was going to return it "because [he] didn't want to take somebody else's property and that's when [he] heard about the cops, please get them here, yes." When asked if returning with the bat might have been seen as threatening, Kyle said he did not think so and saw "it as somebody just

been wronged and now they are trying to get that . . . person in trouble."

Kyle testified that while he was waiting at Kayla's door for the police to arrive, Sherry came out of her apartment with a shotgun and pointed it at him. Kyle did not describe how he approached Sherry's house or indicate that the shotgun had jammed, but he said that there was eventually a struggle for control of the gun. Kyle testified that, during the struggle, Sherry still had the gun pointed at him and had her hand on the trigger, so he "smacked her hands a couple times with that bat to get her to release that shotgun." He denied hitting Sherry, calling it "more of a poke or a prod." Kyle also denied using the bat to hit her at any time before Sherry aimed the shotgun at him.

The jury was instructed on self-defense. Following the guilty verdicts, the court sentenced Kyle to concurrent sentences of 1 to 2 years' imprisonment. Kyle appealed to the Court of Appeals, where he was represented by new counsel.

### 2. Kyle's Assignments of Error in Initial Brief

As relevant to further review, Kyle assigned the following as errors in his brief to the Court of Appeals: (1) the evidence was insufficient to convict Kyle of the charges; (2) the jury erred in finding Kyle guilty of the charges; (3) the trial court erred in accepting the guilty verdicts of the jury, convicting Kyle of second degree assault and use of a deadly weapon to commit a felony; and (4) Kyle was denied effective assistance of counsel in the proceedings below in the following specific instances: (a) trial counsel failed to subpoena to testify Kyle's requested witnesses, who would have been beneficial to him; (b) trial counsel failed to introduce evidence at trial that would have been beneficial to Kyle; (c) trial counsel failed to have Kyle present during important pretrial stages and advise him that he was able to attend the deposition of Sherry; (d) trial counsel failed to adequately pursue a plea agreement;

and (e) trial counsel failed to effectively and adequately prepare for the jury trial.

### 3. Kyle's Arguments in Appellate Brief

In his appellate brief to the Court of Appeals, Kyle argued that the State failed to prove at trial that he had not acted in self-defense. Kyle pointed to the uncontradicted evidence that Sherry was pointing her shotgun at him with her finger on the trigger when he approached her with the bat. The remainder of his brief was dedicated to his ineffective assistance of trial counsel claims.

### (a) Failure to Subpoena Witnesses

On the assigned error that trial counsel failed to subpoena Kyle's requested witnesses, whose testimony would have been beneficial, Kyle explained that these witnesses included "doctors, nurses, Emergency Medical Technicians . . . , a neighbor who witnessed the incident, and emergency call dispatch."[1] Kyle argued these witnesses would have been able to testify that Sherry made statements at the hospital that "the blood on her hands and the stitches on her hands" were the result of "racking the shotgun."[2] "Additionally," argued Kyle, "these witnesses would be able to testify as to the inconsistent statements made by the alleged victim in the hospital."[3]

### (b) Failure to Introduce Beneficial Evidence

On trial counsel's alleged failure to introduce evidence at trial that would have been beneficial, Kyle argued that in a video of Sherry in the hospital, she admitted the blood and stitches on her hands were from racking the shotgun. More generically, Kyle also argued that Sherry made statements inconsistent with her testimony at trial in the video. Further,

---

[1] Brief for appellant at 14.

[2] Id.

[3] Id.

Kyle broadly stated that "[t]rial counsel failed to present any body-cam footage [or] hospital video footage, . . . all which would have been beneficial to [Kyle]," and that "[t]he body-cam footage and the neighbor's Ring Video Doorbell camera footage would support [Kyle's] argument that he was acting in self-defense."[4]

### (c) Failure to Have Kyle Present During Important Pretrial Stages and Advise Him He Was Able to Attend Sherry's Deposition

On his assigned error that trial counsel failed to have Kyle present during "important pretrial stages and advise [him] that [he] was able to attend the deposition of [Sherry]," Kyle did not elaborate on the important pretrial stages he was absent from. He argued only that trial counsel did not inform him of Sherry's deposition and the fact that he could attend. He argued that, had he been present, "he could have aided trial counsel in the questioning of [Sherry]."[5] Sherry's deposition testimony is not in the appellate record.

### (d) Failure to Adequately Pursue Plea Agreement

On trial counsel's alleged failure to "adequately pursue a plea agreement," Kyle appeared to acknowledge the State had offered him a plea agreement whereby he would plead to misdemeanor charges in exchange for the dismissal of the felony charges. He also appeared to acknowledge he was informed of the State's offer and that, despite trial counsel's insistence he take the plea deal, Kyle refused.[6] Kyle explained that when he refused the plea bargain agreement, he and his counsel had not discussed "any aspects or evidence of the case," and that trial counsel "used scare tactics when [Kyle]

---

[4] *Id*. at 15.

[5] *Id*.

[6] *Id*.

insisted on a jury trial."[7] Kyle argued he changed his mind about the State's offer a week before trial, and his counsel told him it was too late. Despite this, "trial counsel failed to approach the State to determine if the plea agreement could still be made."[8]

### (e) Failure to Effectively and Adequately Prepare for Jury Trial

For his assignment of error that trial counsel failed to effectively and adequately prepare for the jury trial, Kyle restated in the argument section of his brief that trial counsel failed to adequately prepare Kayla or Kyle for trial. He then alleged that trial counsel had met with him only two times before trial, each time for less than 5 minutes.

### 4. Court of Appeals' Opinion

In a published opinion,[9] the Court of Appeals affirmed the convictions.

It first found the evidence sufficient to support the jury's convictions; specifically, the jury's rejection of Kyle's claim that he acted in self-defense. The Court of Appeals observed, among other things, the uncontradicted evidence that, after Kyle had wrestled the bat away from Sherry and walked away, Kyle returned with the bat.

The Court of Appeals then addressed the ineffective assistance of trial counsel claims. Relying on *State v. German*[10] and *State v. Mrza*,[11] the Court of Appeals stated an assignment of error on direct appeal alleging ineffective assistance of trial counsel is not sufficiently specific to warrant appellate

---

[7] *Id*.

[8] *Id.* at 16.

[9] *State v. Rupp*, 33 Neb. App. 562, 19 N.W.3d 771 (2025).

[10] *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024).

[11] *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019), *disapproved on other grounds, State v. Hagens, ante* p. 65, 26 N.W.3d 174 (2025).

review unless, standing by itself, the assignment of error contains enough particularity to satisfy what the Court of Appeals described as "a two-prong pleading standard"[12] set forth in *State v. Abdullah*[13]: (1) a district court reviewing a petition for postconviction relief would be able to recognize whether the claim was raised and preserved on direct appeal and (2) the appellate court on direct appeal would be able to determine if the claim could be decided upon the trial record. The Court of Appeals said it is not enough for the defendant to satisfy these two prongs through the argument section of the brief. Quoting *Mrza*, the Court of Appeals said it would not "'scour'"[14] the argument section of the brief to gain greater clarity and specificity.

Applying these principles, the Court of Appeals found that the alleged ineffectiveness of trial counsel for failing to ask the State about whether a plea agreement could still be made was sufficiently assigned and argued. But the Court of Appeals found the record was insufficient to address the claim on direct appeal.

The Court of Appeals held that all other assignments of error alleging ineffective assistance of trial counsel were not specific enough to be addressed. As relevant to our further review, it held that four assignments of error were insufficiently specific, and it refused to consider the brief's corresponding arguments to supply greater specificity.

First, the Court of Appeals found Kyle's assignment of error that trial counsel was ineffective by failing to subpoena Kyle's requested witnesses was insufficiently specific, because it did not give the witnesses' names or descriptions. Second, the Court of Appeals found Kyle's assignment of error that trial counsel was ineffective in failing to introduce

---

[12] *State v. Rupp, supra* note 9, 33 Neb. App. at 579, 19 N.W.3d at 785.

[13] *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014).

[14] *State v. Rupp, supra* note 9, 33 Neb. App. at 576, 19 N.W.3d at 784, quoting *State v. Mrza, supra* note 11.

beneficial "evidence" at trial was insufficiently specific. Third, the Court of Appeals found the assignment of error that trial counsel was ineffective by failing to advise Kyle about Sherry's deposition and ensure his presence was insufficiently specific, because it was "simply too broad of a statement for a later district court to determine whether the specific allegation was preserved."[15] The Court of Appeals did not address the specificity of that part of the assignment of error alleging trial counsel was ineffective for failing to have Kyle appear during important pretrial stages, because it was not argued. Fourth, the Court of Appeals found insufficiently specific the assignment of error that trial counsel had failed to effectively and adequately prepare for the jury trial, because it provided "no detail regarding what his trial counsel failed to do in preparation specifically as it relates to counsel's subsequent performance during [Kyle's] trial."[16]

Judge Bishop concurred in part and in part dissented. Judge Bishop disagreed with the majority's opinion as to how specifically an assigned error must be stated before an appellate court may even reach the appellant's corresponding argument to determine whether an ineffective assistance of trial counsel claim has provided enough particularity for (1) a district court later reviewing a future petition for postconviction relief to be able to recognize whether the claim was raised on direct appeal and (2) the appellate court to make a determination of whether the claim can be decided upon the trial record. Judge Bishop acknowledged *Mrza* "established a new standard,"[17] but she did not believe it went so far as the majority's opinion thought. In Judge Bishop's view of our case law, "If the alleged deficient performance is identified in the assigned error and there is a directly corresponding heading and discussion in

---

[15] *Id.* at 582, 19 N.W.3d at 787.

[16] *Id.* at 583, 19 N.W.3d at 788.

[17] *Id.* at 586, 19 N.W.3d at 789.

the argument section of the appellant's brief, there is no need to 'scour' the brief to determine whether the claim has been sufficiently raised."[18]

Judge Bishop opined that all of Kyle's assigned errors were sufficiently specific to satisfy our general rules of specificity of assignments of error and thus allow consideration of the corresponding arguments in the brief to determine if the ineffective assistance of counsel claim was sufficiently raised under the two-prongs of *Abdullah*. Judge Bishop proceeded to look at the arguments conjunctively with their corresponding assignments of error and found three claims of deficient performance were sufficiently raised, to wit: (1) failing to subpoena medical personnel who treated Sherry, to whom she told that the blood and stitches on her hands were a result of her racking the shotgun, which was allegedly inconsistent with her trial testimony about her hand injuries; (2) failing to introduce a video of Sherry at the hospital during which she allegedly made statements similarly inconsistent with her trial testimony; and (3) failing to effectively and adequately prepare Kyle for trial by meeting with him only two times before the trial, each time for less than 5 minutes. Judge Bishop did not believe any of these claims could be decided on the trial record.

## III. ASSIGNMENTS OF ERROR

Kyle assigns in his petition for further review that the Court of Appeals erred by (1) holding that evidence was sufficient to convict him of the charges and failing to overturn the verdicts of the jury, (2) failing to find he was denied effective assistance of counsel, and (3) holding that the following claims of ineffective assistance of counsel were not preserved: (a) failing to subpoena medical personnel who treated Sherry, to whom she told that blood and stitches on her hands were the result of her racking the shotgun, (b) failing to introduce

---

[18] *Id.* at 585, 19 N.W.3d at 789.

a video of Sherry at the hospital, during which she allegedly made statements inconsistent with her trial testimony, and (c) failing to effectively and adequately prepare Kyle for trial by meeting with him only two times before trial, each time for less than 5 minutes.

## IV. STANDARD OF REVIEW

[1] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[19]

[2] Whether an assignment of error and accompanying argument is too vague to be sufficiently raised before the appellate court is a question of law.[20]

## V. ANALYSIS

In his brief in support of further review, Kyle reiterates his argument that the State failed to prove beyond a reasonable doubt he was not acting in self-defense and asserts the Court of Appeals thus erred by not reversing the jury's verdicts. Kyle also argues the Court of Appeals erred in finding three of his assignments of ineffective assistance of trial counsel were insufficiently stated as viewed in isolation from their corresponding arguments: (1) Trial counsel failed to subpoena to testify Kyle's requested witnesses, who would have been beneficial to Kyle; (2) trial counsel failed to introduce evidence at the trial that would have been beneficial to Kyle; and (3) trial counsel failed to effectively and adequately prepare for the jury trial. For the following reasons, we affirm.

---

[19] *State v. Allen*, 314 Neb. 663, 992 N.W.2d 712 (2023), *modified on denial of rehearing* 315 Neb. 255, 995 N.W.2d 446, *cert. denied* ___ U.S. ___, 144 S. Ct. 1070, 218 L. Ed. 2d 248 (2024).

[20] *State v. Abdullah, supra* note 13.

## 1. Self-Defense

[3] Neb. Rev. Stat. § 28-1409(1) (Reissue 2016) gener-
ally provides the use of force upon or toward another person
is "justifiable" only if the actor believes that such force is
"immediately necessary for the purpose of protecting himself
[or herself] against the use of unlawful force by such other
person on the present occasion." Section 28-1409(5) provides
that when the force is not deadly or used to resist another's
occupation of property under a claim of right,

> a person employing protective force may estimate the
> necessity thereof under the circumstances as he [or she]
> believes them to be when the force is used, without
> retreating, surrendering possession, doing any other act
> which he [or she] has no legal duty to do, or abstaining
> from any lawful action.

We have repeatedly stated that to successfully assert the claim
of self-defense, one must have an objectively reasonable and
good faith belief in the necessity of using force, and the force
used in defense was immediately necessary and justified under
the circumstances.[21]

[4] A defendant's claim of self-defense is a question of fact
for the jury.[22] While there was conflicting evidence as to the
level of force Kyle used when he caused Sherry's injuries
and under what circumstances he did so, there was sufficient
evidence from which the jury could have found either that
the force used by Kyle was not immediately necessary and
justified under the circumstances or that Kyle did not have an
objectively reasonable and good faith belief in the necessity of
using force. The Court of Appeals thus did not err in finding

---

[21] See, *State v. Allen, supra* note 19; *State v. Johnson*, 314 Neb. 20, 988
N.W.2d 159 (2023); *State v. Eagle Thunder*, 201 Neb. 206, 266 N.W.2d
755 (1978).

[22] See, *State v. Kinser*, 252 Neb. 600, 567 N.W.2d 287 (1997); *State v.
Warren*, 9 Neb. App. 60, 608 N.W.2d 617 (2000).

no merit to Kyle's claim that the evidence was insufficient to support the jury's verdicts.

## 2. SPECIFICITY OF INEFFECTIVE ASSISTANCE
## OF TRIAL COUNSEL CLAIMS

We granted further review to clarify the degree of specificity required of a defendant's assignments of error alleging ineffective assistance of trial counsel. On further review, Kyle synthesizes his ineffective assistance of trial counsel claims as the failure to (1) subpoena medical personnel who treated Sherry and to whom she told that blood and stitches on her hands were the result of her racking the shotgun; (2) introduce a video of Sherry at the hospital, during which she allegedly made statements inconsistent with her trial testimony by admitting that the blood and stitches on her hands were from racking the shotgun; and (3) effectively and adequately prepare Kyle for trial by meeting with him only two times before trial, each time for less than 5 minutes. But in his assignments of error in his appellate brief, he assigned trial counsel was ineffective by failing to (1) subpoena to testify Kyle's requested witnesses who would have been beneficial, (2) introduce evidence at trial that would have been beneficial, and (3) effectively and adequately prepare for the jury trial. We agree with the majority opinion of the Court of Appeals that the assignments of error at issue in the initial brief on appeal were insufficiently stated.

[5,6] When a defendant's trial counsel is different from counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, or else the claim will be procedurally barred.[23] This is true even if we ultimately cannot decide the issue on direct appeal.[24] The appellate court will determine if the record on

---

[23] See *State v. Abdullah, supra* note 13.

[24] See *id.*

appeal is sufficient to review the merits of the ineffective per-
formance claims.[25]

[7] Thus, a motion for postconviction relief asserting inef-
fective assistance of trial counsel is procedurally barred when
(1) the defendant was represented by a different attorney on
direct appeal than at trial, (2) an ineffective assistance of trial
counsel claim was not brought on direct appeal, and (3) the
alleged deficiencies in trial counsel's performance were known
to the defendant or apparent from the record.[26] This does not
prevent raising for the first time on postconviction review
claims of ineffective assistance of appellate counsel for failing
to raise a claim on direct appeal or those claims that were both
unknown and unapparent from the record.[27]

[8,9] We have long held that a generalized and vague assign-
ment of error that does not advise an appellate court of the
issue submitted for decision will not be considered.[28] More
recently, we have explained that an assignment is specific
when it addresses a specific issue that does not require addi-
tional information to understand precisely what the assignment
attacks.[29] A claim of ineffective assistance of trial counsel that
is insufficiently stated is no different than a claim not stated
at all and will not prevent the procedural bar accompanying
the failure to raise all known or apparent claims of ineffective
assistance of trial counsel.[30]

[10] In *Abdullah*, we elaborated on the level of particular-
ity necessary to raise a claim of ineffective assistance of trial
counsel.[31] We explained that the level of specificity required

---

[25] See *id.*

[26] *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021).

[27] See *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018).

[28] *State v. Abdullah, supra* note 13.

[29] *State v. Kruger, ante* p. 361, ___ N.W.3d ___ (2025). See, also, *State v. Hagens, supra* note 10.

[30] See *State v. Abdullah, supra* note 13.

[31] *Id.*

for an assignment of error and its accompanying argument must logically depend upon the purposes of the appellate court's review.[32] For the purpose of avoiding a procedural bar to a future postconviction action, appellate counsel must present the claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.[33] In applying these requirements, we are "sensitive" to the defendant's ability to become familiar with the trial record on a short deadline.[34] But we could "think of no good reason why [the defendant] would be unable to give appellate counsel the names or descriptions of the uncalled witnesses he claims he informed trial counsel of,"[35] as this was a matter known to the defendant.

[11] In *State v. Filholm*,[36] we clarified that while a defendant with new counsel on appeal must make specific allegations of trial counsel's deficient performance known to the defendant or apparent from the record, the defendant is not required to make detailed factual allegations of prejudice to preserve a claim of ineffective assistance of trial counsel. We explained that a requirement to make specific allegations of prejudice would be a waste of time and resources, because it would require the defendant to allege facts in detail that are "likely not within the appellate record or known to the defendant without further inquiry."[37]

---

[32] *Id*.

[33] *Id*.

[34] *Id.* at 134, 853 N.W.2d at 867. See, also, *Massaro v. United States*, 538 U.S. 500, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

[35] *State v. Abdullah, supra* note 13, 289 Neb. at 134, 853 N.W.2d at 867.

[36] *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

[37] *Id.* at 771, 848 N.W.2d at 579.

Until our decision in *Mrza*,[38] released on April 19, 2019, we looked to the assignment of errors conjunctively with the argument sections of the defendant's appellate brief to discern if the ineffective assistance claim was sufficiently raised. We held for the first time in *Mrza* that the assignment of error must "specifically allege deficient performance" and "we should not have to scour the argument section of an appellant's brief to extract specific allegations of deficient performance."[39] We said that although we would not do so in the future, for that case, we "synthesized a specific assignment from the argument section of [the defendant's] brief."[40] We have since reminded litigants and their attorneys that briefs filed after April 19, 2019, would have to comply with the new specificity requirement set forth in *Mrza*.[41]

After *Mrza*, in *State v. Archie*,[42] the defendant generally assigned that he was denied effective assistance of trial counsel. In the argument section of his brief, the defendant elaborated that trial counsel did not object to proceeding to sentencing with a presentence investigation report that lacked an interview of the defendant, and trial counsel did not advise the defendant of the possibility of requesting a continuance so such an interview could be conducted. We reiterated we would not synthesize from the argument section of the defendant's brief the necessary specific alleged instances of deficient performance. Further, we held that the defendant could not cure the insufficiently stated assignment of error in his reply brief. We said the "general" assignment of ineffective assistance did not comply with *Mrza* that the assignment of error must specifically allege deficient performance.

---

[38] *State v. Mrza, supra* note 11.

[39] *Id.* at 935, 926 N.W.2d at 86.

[40] *Id.*

[41] See, *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020); *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019) (Cassel, J., concurring).

[42] *State v. Archie*, 305 Neb. 835, 943 N.W.2d 252 (2020).

Other cases after *Mrza* have followed suit. In *State v. Guzman*,[43] we rejected as insufficiently stated an assignment of error that the defendant had received ineffective assistance of counsel "in numerous instances as more particularly set out hereinafter." We disagreed with the defendant's suggestion that we should read this assignment of error in conjunction with the particular deficiencies identified in the heading of his argument on the issue. Similarly, in *State v. Npimnee*,[44] we rejected an assignment of error generally alleging that trial counsel was ineffective, because the defendant's "assignments of error fail to allege the specific ways in which trial counsel was ineffective" and, thus, he "failed to preserve any specific allegation relating to the ineffective assistance of counsel on direct appeal."

Cases applying *Mrza* have also found assignments of error that are more specific than the general allegation that trial counsel was ineffective were nevertheless insufficient under the requirement that they specifically allege trial counsel's deficient performance. Thus, in *State v. Blaha*,[45] we found the assignment of error alleging trial counsel was ineffective by failing to "engage in pretrial litigation" was not sufficiently stated—though we looked to the argument section of the brief for more specificity because it was filed before our decision in *Mrza* was released. In *State v. Lowman*,[46] we found the assignment of error that "'[t]he defendant received ineffective assistance of counsel when defendant's counsel filed a last minute motion to suppress and was ill-prepared and was unable to brief the issues for the court'" was too broad and conclusory and did not specifically allege deficient performance.

---

[43] *State v. Guzman, supra* note 41, 305 Neb. at 382, 940 N.W.2d at 560.

[44] *State v. Npimnee*, 316 Neb. 1, 13, 2 N.W.3d 620, 629 (2024).

[45] *State v. Blaha*, 303 Neb. 415, 419, 929 N.W.2d 494, 499 (2019).

[46] *State v. Lowman*, 308 Neb. 482, 488-89, 954 N.W.2d 905, 914 (2021).

In *State v. Figures*,[47] we held the defendant's assignment of error that trial counsel was ineffective by failing to move for a new trial did not specifically allege deficient performance because it did not specify any ground for the motion. We also found that even if we synthesized a more specific assignment from the argument section of the brief, the argument still lacked the necessary specificity by asserting he provided a letter to trial counsel but did not describe what information was contained in the letter. In *State v. Haas*,[48] we held the defendant's assignment that trial counsel was ineffective by failing to divulge counsel's health condition that impaired his ability to represent the defendant through the strenuous pretrial proceedings and at trial was insufficient because it did not identify how the unspecified health condition made his trial counsel ineffective.

In *State v. Rush*,[49] we addressed the merits of several assignments of error, each alleging different acts of ineffective assistance of counsel. The least specific of these alleged that trial counsel inadequately prepared the defendant to testify in his own defense, but we looked to the argument section of the brief, which described the defendant's "'combative stance toward the prosecutor.'"[50] We held we could not determine on the trial record the merits of that alleged ineffective assistance claim.

These cases demonstrate that the clarity of the defendant's arguments in the argument section of the brief, and whether they fall under headings corresponding to the assigned errors, are not factors in determining if the assignment of error is sufficiently specific in its allegations of deficient conduct.

---

[47] *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021).

[48] *State v. Haas*, 317 Neb. 919, 12 N.W.3d 787 (2024).

[49] *State v. Rush*, 317 Neb. 622, 11 N.W.3d 394 (2024), *modified on denial of rehearing* 317 Neb. 917, 12 N.W.3d 787.

[50] *Id.* at 674-75, 11 N.W.3d at 436.

It does not matter if finding the clarity involves "scouring" as opposed simply to reading the argument section of the brief. Indeed, *Npimnee*, *Blaha*, and *Lowman* do not mention having to "scour" the brief at all. *Mrza* and subsequent cases have made clear that the assignment of error, standing alone, must specifically allege what conduct constituted deficient performance.

[12,13] That begs the question of what constitutes an adequately specific description of deficient performance in an assignment of error. We hold that the assignment of error must, standing alone, permit an appellate court to determine if the claim can be decided upon the trial record and also permit a district court to later recognize that the claim was raised on direct appeal. This requires a description of the specific conduct alleged to constitute deficient performance.[51] The argument section of the brief is to elaborate on these claims by discussing legal authority and its application to the trial record, not to set forth, for the first time, what the allegedly deficient act was.

To illustrate, the assigned errors in *Blaha*, *Lowman*, and *Figures*—of failing to engage in pretrial litigation, being ill-prepared for a motion to suppress, and failing to move for a new trial—were too general, standing alone, to determine if the trial record proved or rebutted the merits of the claims or to give guidance to a postconviction court. One could only guess in what way the pretrial litigation or motion to suppress was allegedly lacking or on what grounds a motion for new trial should have been made. The allegation of having a health condition in *Haas* does not specifically allege deficient conduct because it is not deficient conduct by itself, and the general allegation that it impaired counsel's ability to represent the defendant at trial was too vague to be tested against the trial record. In none of these cases was there an apparent

---

[51] *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023); *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021).

impediment to the defendant crafting more specific assign-ments of error. We were perhaps too generous in *Rush* to look to the argument section of the brief for more particularity, since the assignment of error, standing alone, did not describe how the defendant was inadequately prepared. To the extent our decision in *Rush* is contrary to *Mrza* and its progeny, we disapprove of it.

[14-16] To provide further guidance as to the requirements of specificity, we observe that any claim of ineffective assis-tance of counsel alleging deficient conduct must be more than generalities of inadequate preparation or failures to introduce beneficial evidence. Claims of alleged failures by counsel respecting motions must set forth on what grounds a motion should have been made or what information was omitted from a motion that was made. We repeat that when the claim of ineffective assistance on direct appeal involves uncalled witnesses, the defendant must give the names or descrip-tions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. The defendant need not make specific factual allegations as to what an uncalled person or persons would have said, which will not be found in the appellate record, but what the witness would have said may be part of the witness' description when the name is unknown.[52]

As an example, we observe that Kyle's "Statement of Errors" in his petition for further review was sufficiently stated and is a good model for concise specificity. But Kyle did not, as he must, provide such necessary specificity in his initial appellate brief. Kyle's assignments of error in his appellate brief did not provide the names or descriptions of the uncalled witnesses whose testimony allegedly would have been beneficial, did not describe with any specificity what allegedly beneficial evidence counsel deficiently failed

---

[52] See *State v. Rush, supra* note 49. See, also, *State v. Lowman, supra* note 46.

to offer at trial, and set forth in only general and conclusory terms that trial counsel failed to effectively and adequately prepare of the trial. Under *Mrza* and its progeny, these assignments of error were insufficiently stated. However, we agree with the Court of Appeals that the alleged ineffectiveness of trial counsel for failing to ask the State about whether a plea agreement could still be made was sufficiently assigned and argued, and cannot be determined on the trial record.

## VI. CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Appeals.

Affirmed.