IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. OPAL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

KIANNA J. OPAL, APPELLANT.

Filed March 3, 2026.    No. A-25-454.

Appeal from the District Court for Douglas County: MOLLY B. KEANE, Judge. Affirmed.

Timothy J. Anderson, of Dornan, Howard, Breitkreutz, Dahlquist & Klein, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

PIRTLE, BISHOP, and FREEMAN, Judges.

PIRTLE, Judge.

INTRODUCTION

Kianna J. Opal appeals her plea-based convictions and sentences in the district court for Douglas County for second degree murder and possession of a deadly weapon (not a firearm) during the commission of a felony. She contends that her sentences were excessive and her trial counsel provided ineffective assistance. Based on the reasons that follow, we affirm.

BACKGROUND

Opal was originally charged by information with first degree murder and use of a deadly weapon (not a firearm) to commit a felony. Pursuant to a plea agreement, Opal pled no contest to second degree murder and possession of a deadly weapon (not a firearm) during the commission of a felony.

At the plea hearing, the State provided the following factual basis:

- 1 -

The State's evidence would establish on May 12, 2024, at approximately 3:08 a.m., law enforcement was called out to a residence at . . . here in Douglas County. They began an investigation into a potential assault. There was a victim, Ezra Sinkiawic, that did arrive at the University of Nebraska Medical Center from some injuries she sustained at that residence. She ultimately died of injuries, a stab wound of her torso, and a homicide investigation was began by law enforcement.

State's evidence would indicate that numerous parties were present in that residence in the early morning hours of May 12th, 2024. There was ultimately a disturbance between the parties at that residence, of which Kianna Opal was a part of. The parties that didn't leave--didn't live there, left the residence. The people that remained were Kianna Opal, Kaprese Lacey, and Darik Rodgers.

A couple of the parties that were present did return to the door to retain some property and returned some keys. There was Ezra Sinkiawic, the victim in this case, Alexis Gonzalez, and Raghad Alshanior that returned to the residence. Eventually, they were left in the residence to retrieve their property. The defendant, Kianna Opal, came up from the basement at that time, went to the kitchen, and retrieved a knife. She ran towards those parties, ultimately stabbing Alexis Gonzalez in the abdomen. Alexis Gonzalez ran out of that residence. There is a video showing that, and there's also video of she's at least followed out of that residence by Kianna--Ezra Sinkiawic is the one that stabbed, I apologize. That would stab, Your honor. She runs out of the residence, as do the other two parties. They are followed by Kianna Opal, who runs out of the house. She is on video, still holding a large knife.

Those parties do get in a vehicle and proceed to the Nebraska Medical Center. As I indicated, Ezra Sinkiawic dies of a stab wound to her abdomen, and that was confirmed via an autopsy. Now, there were numerous witnesses who were present who confirmed essentially that series of events, all those events here in Douglas County, Nebraska.

The trial court accepted Opal's pleas and found her guilty of second degree murder and possession of a deadly weapon (not a firearm) during the commission of a felony. The court ordered a presentence investigation (PSI) and set the matter for sentencing.

The trial court sentenced Opal to 58 to 76 years' imprisonment for second degree murder, and to 2 to 4 years' imprisonment for possession of a deadly weapon in the commission of a felony. The court ordered the sentences to be served consecutively.

## ASSIGNMENTS OF ERROR

Opal assigns the trial court erred in imposing excessive sentences. She also assigns that her trial counsel was ineffective in the following ways: (1) failing to file and litigate a motion to suppress statements made by Opal to police, (2) failing to present mitigating information regarding her mental health at sentencing, (3) failing to facilitate the transfer of her records, and (4) failing to request a second opinion on whether she was legally insane at the time of the offense.

STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Tvrdy*, 315 Neb. 756, 1 N.W.3d 479 (2024). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.* Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *Id.*

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

ANALYSIS

*Excessive Sentences.*

Opal first assigns that the trial court abused its discretion by imposing excessive sentences. She argues the sentences were excessive because she was a 19-year-old girl with a limited criminal history, and a significant history of trauma, abuse, and mental illness. She claims the court did not fully consider the mitigating circumstance that on the night of the incident she was suffering from untreated bipolar disorder and post-traumatic stress disorder and was also under the influence of alcohol and marijuana.

Opal was convicted of second degree murder, a Class IB felony, and possession of a deadly weapon (not a firearm) during the commission of a felony, a Class III felony. A Class IB felony is punishable by a minimum of 20 years' imprisonment and a maximum of life in prison. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). A Class III felony is punishable by a maximum of 4 years' imprisonment, with no minimum. *Id*. The trial court sentenced Opal to 58 to 76 years' imprisonment for second degree murder, and to 2 to 4 years' imprisonment for possession of a deadly weapon in the commission of a felony. Opal's sentences were within the statutory limits, which she does not dispute.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. King*, 316 Neb. 991, 7 N.W.3d 884 (2024). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as, (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and

circumstances surrounding the defendant's life. *Id*. A sentencing court is not required to articulate on the record that it has considered each sentencing factor and make specific findings as to the facts that bear on each factor. See *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024).

At the sentencing hearing, at Opal's request, the court added certificates from courses Opal had completed in jail, letters from her family and friends, and a psychological assessment. The court stated it had reviewed these additions. A video surveillance clip of the incident was also added at the State's request. Defense counsel and the State provided argument as to the appropriate sentence to be imposed and Opal exercised her right to allocution, where she expressed remorse for the incident and apologized to the victim's family. Several members of the victim's family also provided statements to the court.

Before pronouncing Opal's sentences, the court stated it had reviewed the PSI, the factors set forth in Neb. Rev. Stat. § 29-2260 (Supp. 2025), as well as the defendant's age, mentality, education and experience, social and cultural background, past criminal record or record of law abiding conduct, the motivation for the offense, the nature of the offense, and the amount of violence involved in the commission of the offense. The court stated there were various testing results in the PSI, including one test result indicating Opal was high risk for community supervision, another test result indicating she was "a problem risk" in the areas of violence and antisocial behavior, and a third test result indicating she was high risk to reoffend. The court discussed Opal's psychological assessment, in which the doctor stated that her violent behavior on the date of the incident was a manifestation of her psychiatric symptoms intensified by substance use. Further, the court noted it had received and reviewed letters of support for Opal, as well as victim impact statements.

Opal is asking this court to reweigh the sentencing factors in favor of a lesser sentence based upon factors already contained in the PSI, which were known and considered by the district court when it imposed sentence. However, it is not the function of an appellate court to conduct a de novo review of the record to determine what sentence it would impose. *State v. Horne*, 315 Neb. 766, 1 N.W.3d 457 (2024). So long as the trial court's sentence is within the statutorily prescribed limits, is supported by competent evidence, and is not based on irrelevant considerations, an appellate court cannot say that a trial court has abused its discretion. *State v. Halligan*, 20 Neb. App. 87, 818 N.W.2d 650 (2012). The trial court's sentences, as previously determined, are within statutory limits, the sentences are supported by competent evidence, and there is no indication that the trial court considered irrelevant information. We find that the trial court did not abuse its discretion in the sentences it imposed.

*Ineffective Assistance of Counsel Claims.*

Before we address Opal's ineffective assistance of counsel assignments of error, we first set forth the relevant caselaw for these claims.

When a defendant's trial counsel is different from his counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a

determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. John*, 310 Neb. 958, 969 N.W.2d 894 (2022).

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question. *Id.* The record on appeal is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025). Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires examination of facts not contained in the record. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2nd 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. John, supra.* To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *Id.* To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. John, supra.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.*

The Nebraska Supreme Court has long held that a generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered. *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025), citing *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). The court held for the first time in *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019), *disapproved on other grounds*, *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025), that the assignment of error must "specifically allege deficient performance" and "we should not have to scour the argument section of an appellant's brief to extract specific allegations of deficient performance."

The court has further explained that an assignment is specific when it addresses a specific issue that does not require additional information to understand precisely what the assignment attacks. *State v. Kruger, supra*. A claim of ineffective assistance of trial counsel that is insufficiently stated is no different than a claim not stated at all and will not prevent the procedural bar accompanying the failure to raise all known or apparent claims of ineffective assistance of trial counsel. See *State v. Abdullah, supra.*

The court recently clarified that the assignment of error must, standing alone, permit an appellate court to determine if the claim can be decided upon the trial record and also permit a district court to later recognize that the claim was raised on direct appeal. See *State v. Rupp, supra.* This requires a description of the specific conduct alleged to constitute deficient performance. *Id.* The argument section of the brief is to elaborate on these claims by discussing legal authority and its application to the trial record, not to set forth, for the first time, what the allegedly deficient act was. *Id.*

Opal assigns that her trial counsel was ineffective in (1) failing to file and litigate a motion to suppress statements she made to police officers, (2) failing to present mitigating information regarding her mental health at sentencing, (3) failing to facilitate the transfer of her records, and (4) failing to request a second opinion on whether she was legally insane at the time of the offense. We conclude that Opal's first three ineffective assistance of counsel assignments of error are insufficiently stated.

Opal's first assignment of error fails to state what statements would have been suppressed and on what grounds the motion to suppress would have been made. See *id.* (citing past cases where assignments of error were insufficient when claiming counsel was ineffective for failing to engage in pretrial litigation or was ill-prepared for motion to suppress or failed to move for new trial, as such assigned errors were too general, standing alone; alleged failures by counsel respecting motions must set forth on what grounds motion should have been made). Her second assignment of error fails to state what information regarding her mental health would have been mitigating and how it would have affected her sentencing. The third assignment of error fails to state what records she is referring to, and to where or whom they should have been transferred.

As the court clarified in *State v. Rupp, supra*, any claim of ineffective assistance of counsel alleging deficient conduct must be more than generalities of inadequate preparation or failures to introduce beneficial evidence. Opal's first three ineffective assistance of counsel claims are simply generalities of counsel's alleged deficient performance.

Regarding Opal's fourth ineffective assistance of counsel claim that trial counsel was ineffective in failing to request a second opinion on whether she was legally insane at the time of the offense, we conclude that the claim is sufficiently stated but Opal cannot establish prejudice. Opal's trial counsel arranged for a clinical psychologist to conduct a psychological evaluation of Opal. The psychologist concluded Opal did not satisfy the requirements for legal insanity. There is nothing to indicate a second opinion would have had any different result to benefit Opal. This claim fails.

## CONCLUSION

We conclude the district court did not abuse its discretion in the sentences it imposed. We further conclude that Opal's first three ineffective assistance of counsel assignments of error were insufficiently stated and the fourth one fails because she cannot establish prejudice. Accordingly, Opal's convictions and sentences are affirmed.

AFFIRMED.